Bruce B. Steinmann and Alice P. Steinmann v. Commissioner.
Steinmann v. Commissioner
Docket No. 5916-70.
United States Tax Court
T.C. Memo 1971-295; 1971 Tax Ct. Memo LEXIS 37; 30 T.C.M. (CCH) 1251; T.C.M. (RIA) 71295; November 22, 1971, Filed. Bruce B. Steinmann, pro se, 50 Park Ave., Caldwell, N. J., Richard Baron for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1966 in the amount of $1,284.43. The issues for decision are as follows: (1) Whether petitioners are entitled under section 167 [1] to a depreciation deduction for 1966 for certain buildings and equipment on their farm; *38 (2) Whether petitioners incurred deductible farm expenses under section 162(a) in the amount of $1,765.11 during 1966; (3) Whether petitioners incurred deductible travel expenses under section 162(a) in the amount of $1,873.31 during 1966; and (4) Whether petitioners incurred expenses under section 162(a) in the amount of $495.80 in maintaining an office in their home. Findings of Fact Petitioners, Bruce B. Steinmann and Alice P. Steinmann, husband and wife, were legal residents of Caldwell, New Jersey, at the time they filed their petition. They filed their joint Federal income tax return for 1966 with the Internal Revenue Service Center, Philadelphia, Pennsylvania. For convenience Bruce B. Steinmann will hereinafter be referred to as petitioner. Issues 1 and 2. Depreciation and Farm Expenses In 1966 petitioner purchased a 115.45-acre farm with 92 tillable acres near Mt. Bethel, County of Northampton, Pennsylvania, for a total purchase price of $38,000. Agreement was reached for the purchase in January 1966, and petitioner signed the purchase contract within a month or two thereafter. He took possession of the farm on July 1 of that year. Petitioner purchased and operated *39 the farm with the intention of making a profit therefrom. In addition to approximately 125,000 feet of multistrand barbed wire fence which surrounded and divided the farm, there were a number of buildings on the property. There was a barn complex consisting of a silo, a long barn, and a shorter barn attached together, a shed not attached to the barn, together with a house, which petitioner used as an office, storage area, and living 1252 quarters, and an equipment storage building located along the lane leading into the farm. At the time petitioner acquired the farm, he also purchased certain equipment and machinery which belonged to the previous owner. This included a tractor, for which petitioner paid $2,000, a farm wagon, for which he paid $200, a plow worth $75, and a hay rake valued at $100. For 1966 petitioner sustained depreciation on his farm properties computed as follows: Depreciation
Cost of
for 1966 from
Item
Basis
Method
Rate
July 1
Tractor
$ 2,000.00
Straight line
25%
$250.00
Barn
20,000.00
Straight line
4%
400.00
Farm Wagon
200.00
Straight line
10%
10.00
Plow
75.00
Straight line
10%
3.75
Hay Rake
100.00
Straight line
10%
5.00
Fences
1,200.00
Straight line
5%
30.00
Auto
2,164.00
Straight line
33 1/3%
365.50
*40 Since petitioner had possession of the farm from July 1, 1966, he sustained depreciation for a period of only one-half of the year. In determining the basis of the buildings comprising the "barn," petitioner relied primarily upon a June 1960 appraisal of the property by the County of Northampton, Pennsylvania. This appraisal fixed the value of the farm as of 1960 at $30,000, allocating $8,200 to the land and $21,800 to the improvements. In the light of the ratio between land and improvements as determined by that appraisal, petitioner allocated $20,000 of the $38,000 purchase price to the barn and related structures. The "cost or basis" for the other properties on which depreciation was claimed reflected their costs to petitioner. The depreciation rates employed and reflected in the table are the rates shown in the "Farmers Tax Guide," a publication issued by the Internal Revenue Service. Since petitioner did not take physical possession of the farm until the middle of the summer of 1966, it was not possible for him to plant crops in time to harvest them that year. Furthermore, before the land could be prepared properly for planting, soil testing and crop planning had to be done. *41 During 1966, after petitioner took possession, he spent a high percentage of his time at the farm, painting and repairing buildings and machinery, taking soil samples, consulting with agricultural agents from both Federal and State agricultural departments, and preparing the land for the next year's planting. During 1966 petitioner paid the following expenses in the operation of the farm: Item
Amount
Repairs and maintenance
$ 194.69
Machine hire
10.00
Supplies
154.75
Gasoline, fuel, etc.
$ 225.11
Interest
388.66
Taxes
704.21
Utilities
80.14
Postage 7.55
Total
$1,765.11
In his notice of deficiency, respondent disallowed the depreciation deduction and the expense deductions for failure of substantiation and, in the alternative, on the ground that they were not ordinary and necessary business expenses. Issue 3. Travel Expenses During 1966 petitioner was an Assistant Professor of Management at Rutgers - the State University of New Jersey (hereinafter referred to as Rutgers). In this capacity he was expected to be prepared to teach the following courses: Principles of Business Organization and Management; Production Planning and Control; Business *42 Management; Industrial Relations; Work Simplification and Work Measurement; Wage and Salary Administration, and others. Since many of the courses within petitioner's field of expertise dealt with manufacturing techniques and management, it was necessary for him to understand and be able to present to his students the latest methods and practices in the manufacturing fields. He was required to have knowledge of not only manufacturing processes, but the use of computers in management as well. Petitioner received notification from Rutgers that a group flight to Europe was being offered for the early part of the summer of 1966. It was to run for a period from May 30, 1966, to June 24, 1966. Petitioner, after discussing it with his supervisor at Rutgers, made arrangements to go on the trip to Europe. His primary purpose 1253 in taking the trip was to observe the manufacturing and computer processes, and interview officials and other representatives of the various European manufacturing companies which shipped their products to the United States; notably, Volkswagen, Fiat Motors, and Mercedes-Benz. In addition, petitioner wished to visit various universities in Europe in order to confer *43 with professors concerning their teaching programs, and to gather further materials for his own courses. Petitioner left New York on the flight for Europe on May 30, and on the following day he arrived in the Netherlands. The exact itinerary of his stay in Europe is detailed in the record. Petitioner planned his entire trip around visiting the automotive manufacturing companies listed above and various universities. When not interviewing personnel at one of these plants, inspecting the manufacturing processes, or visiting with university faculty members, he was traveling in order to reach the next destination. Since he had written to each of the manufacturing companies he wished to visit and had arranged appointed times for his visits, the travel was planned so that he could be at each point at the required time. Petitioner's wife accompanied him on the trip, serving as his assistant whenever necessary, transcribing his notes, and occasionally interviewing manufacturing personnel. Petitioner's primary purpose for the trip was to maintain and improve his skills as a professor of management. The entire itinerary was planned so that he could visit as many manufacturing companies *44 and as many universities as possible. During the entire trip in Europe, petitioner spent an average of 8 hours a day in business interviews or business travel. Much of the material he gathered during the trip was used directly in the courses he taught at Rutgers. During petitioner's trip to Europe, he incurred the following deductible travel expenses: Transportation
5,500 miles at 10 cents per mile
$ 550.00
Air fare New York-Europe (return)
200.00
Rail fare Netherlands-Germany
10.50
Bus fare (airport, intra-city) 7.50
Total transportation expenses
$ 768.00
Lodging - 26 days
$ 180.00
Meals - 26 days
190.00
Tolls
85.51
Miscellaneous costs 9.25
Total Travel Expenses
$1,232.76
Respondent, in his notice of deficiency, disallowed the entire travel expenses incurred during the trip to Europe on the ground that petitioner had not established that they were an ordinary and necessary business expense. Issue 4. Home Office Expenses During 1966 petitioner was not provided with an office at any of the Rutgers' campuses. All his work associated with teaching his courses, including grading papers and preparing lectures, was done in his office at *45 his home. In addition, he stored all his books and papers in his home and maintained his files there. Petitioner lives in a two-story house. On the ground floor there is a living room, dining room, and kitchen; on the second floor there are three bedrooms and an office. Petitioner kept many of his papers and files in the office, although some of his material was stored in the dining room and in the basement. Petitioner's office was used for nothing other than his work. In addition, petitioner subscribed to various magazines and newspapers which were necessary for preparing his courses and these were also stored in his home. Petitioner incurred and deducted business expenses for use of his office during 1966 in the amount of $495.80. This figure was arrived at by taking one-seventh of the total expenses for depreciation, insurance, maintenance, and utilities, and adding the costs of the various publications to which he subscribed. In his notice of deficiency, respondent disallowed all the claimed expenses incurred in maintaining the office on the ground that they were not shown to be ordinary and necessary business expenses. Opinion Issues 1 and 2. Depreciation and Farm Expenses
*46 Respondent's notice of deficiency disallowed depreciation on the farm buildings and equipment because of petitioner's "failure to prove that * * * [he] had such a basis in these items, or that they were used in pursuit of a trade or business." Petitioner testified that he derived his basis for the buildings from a county appraisal of the land and buildings made in 1960. Prior to closing his purchase of the farm, he examined and priced dozens of other farm properties. He testified that he thought the 1254 ratio of values between land and buildings reflected in the county appraisal was a reasonably accurate one. He also testified as to the value or cost of each of the other pieces of property for which depreciation was claimed. The evidence indicates he then selected the method of depreciation and determined the useful life and the rate of depreciation on the basis of the figures listed for such items in the Internal Revenue Service's "Farmers Tax Guide." On brief respondent has conceded that petitioner operated the farm as a trade or business. In the light of all the evidence presented by petitioner supporting the claimed depreciation under section 167(a), [2] and in view *47 of respondent's failure to present evidence tending to show the impropriety of petitioner's methods, we have found that petitioner's method for claiming depreciation is a reasonable one. However, since petitioner took possession of the property on July 1, 1966, he is entitled to a deduction for depreciation for only one-half of the year, and our Findings so reflect. Petitioner testified that much work had to be done on the farm after he took possession in order to ready it for production the following year. The buildings needed to be painted and repaired; supplies needed to be purchased, and other expenses were incurred. In the light of the entire record, we are satisfied, and our Findings show, that petitioner sustained the business expenses claimed on his return and that they were incurred in the ordinary course of his farm business. Issue 3. Travel Expenses Respondent disallowed petitioner's travel expenses *48 incurred while he was in Europe on the ground that they were personal expenses, not ordinary and necessary business expenses. Petitioner argues that the European trip was undertaken primarily for the purpose of maintaining and improving his skills as a professor of management at Rutgers. We agree with petitioner. Petitioner's travel expenses are deductible under section 162(a) if they constitute "ordinary and necessary" business expenses. Section 1.162-5(a), Income Tax Regs., provides that "Expenditures made by an individual for education * * * are deductible as ordinary and necessary business expenses * * * if the education - (1) Maintains or improves skills required by the individual in his employment * * *." Section 1.162-5(d), Income Tax Regs., pertaining to travel as a form of education, provides: (d) Travel as a form of education. * * * expenditures for travel * * * as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment * * *. For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment *49 * * * only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment * * *. Petitioner introduced much evidence to show that the trip to Europe was primarily for the purpose of maintaining and improving his skills as a Professor of Management, and that the nature of his courses required that he have first hand knowledge of the very latest methods of production and management. To this end, his entire itinerary was planned so that he could visit a number of factories and universities throughout Europe. All his activities and his traveling were designed to provide him the opportunity to interview individuals at various manufacturing plants, and to observe the plants in operation. Petitioner testified that one of the most important areas of study with regard to domestic manufacturing and management is the nature and effect of foreign imports. Petitioner's visits to the various automotive assembly plants were designed to provide firsthand knowledge of the foreign manufacturing business in order for him to more effectively teach his courses. Moreover, petitioner's supervisor was aware *50 of his planned trip and had given his approval. While this last factor is not determinative of the nature of the expenses, it lends credence to petitioner's claim. In light of all the evidence, we believe petitioner's trip to Europe was undertaken for the express purpose of maintaining or improving his skills as a professor In the 1255 words of the regulation quoted above, "the major portion of the activities during * * * [his travel] period * * * [was] of a nature" which "directly" maintained or improved the skills required in his Rutgers teaching position. We do not believe, however, that Alice Steinmann's expenses fall within the requirements of the regulations. Although she assisted petitioner throughout the trip, we do not believe the "major portion" of her activities was "directly" related to petitioner's educational undertakings, but rather was of a personal nature. In our Findings, therefore, we have not allowed a deduction for that portion of the travel expenses attributable to her. Our Findings reflect our estimate of the portion of the travel expenses that are deductible. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). Issue 4. Home Office Expenses
*51 Based upon the record, we think petitioner's expenses incurred in maintaining an office in his home are ordinary and necessary business expenses. Rev. Rul. 64-272, 1964-2 C.B. 55. The evidence shows that petitioner did not have an office on any of the Rutgers' campuses, and that it was necessary for him to maintain an office in his home in order to perform his duties as a professor. A careful study of the available evidence convinces us that petitioners incurred the expenses claimed, and they are deductible under section 162(a). To reflect our Findings, Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise noted.↩
2. SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, * * *↩